IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Case No. 06-36773 |
| Latanya Johnson Maxey, | § | |
|    Debtor. | § | |

### MEMORANDUM OPINION

    This is the eighth bankruptcy petition filed by Ms. Maxey or her husband since October 3, 2003. Immediately after the petition was filed, Option One Mortgage Corporation, as servicer for Wells Fargo Bank, N.A. ("Option One"), proceeded with a state law foreclosure of the Maxey's home. Option One seeks a declaration that the automatic stay was inapplicable in this case or seeks an annulment of the stay to validate the foreclosure. Because this is Ms. Maxey's second case pending within the past year, Ms. Maxey seeks an order extending the automatic stay beyond 30 days pursuant to 11 U.S.C. § 362(c)(3). On December 21, 2006, the Court conducted a combined evidentiary hearing on both motions.

### Jurisdiction and Record

    The relief requested by Option One arises under § 362(c)(4) and § 362(d) of the Bankruptcy Code. The relief requested by Ms. Maxey arises under § 362(c)(3) of the Bankruptcy Code. This Court has jurisdiction of these matters under 28 U.S.C. § 1334(a). These are core maters under 28 U.S.C. § 157(b).

    At the hearing on December 21, 2006, the Court heard oral testimony from Ms. Maxey, Mr. Maxey, and from Branch Shepherd. Mr. Shepherd was called as a witness by Ms. Maxey. The Court also considered documents submitted by Option One. Additionally, the Court takes judicial notice of the contents of its own dockets in the multiple cases filed by Mr. or Ms. Maxey.

### Facts

    Ms. Maxey or her husband have filed a total of nine chapter 13 bankruptcy petitions in the United States Bankruptcy Court for the Southern District of Texas. The first case (98-32499) was a joint case and resulted in a chapter 13 discharge after the Maxeys successfully completed their plan obligations. The discharge was granted on December 13, 2001.

    On December 5, 2001, the Maxeys purchased a home with financing provided by Option One. The financing was represented by a promissory note in the amount of $235,063.00 that was secured by a deed of trust on the home.

    The Maxeys made payments on the promissory note up until June, 2003. **Between July, 2003 and December 26, 2006, the Maxeys have made no payments on their home mortgage.**

On October 3, 2003, the Maxeys filed a new chapter 13 petition. The case commenced by that filing was dismissed on February 23, 2004. By October 2003, the Maxeys had amassed $22,639.40 in new, unpaid unsecured debt. Substantially all of that debt was represented by charges on credit cards.

Within 6 weeks, Ms. Maxey filed a third case (04-34860 filed on April 2, 2004). Over that short period of time, Ms. Maxey's unsecured debts had risen by another $2,500. Most of the increase was attributable to medical services. The third case was dismissed on January 25, 2005.

During the third case, Option One was granted leave to foreclose on the Maxey's home. However, before it could proceed with the foreclosure, Mr. Maxey filed a new petition (case 04-47444 filed on December 6, 2004). That fourth case was dismissed on March 30, 2005.

The fifth petition was filed on June 6, 2005, by Mr. Maxey. It was dismissed on September 14, 2005.

The sixth petition was filed by Ms. Maxey on December 3, 2005. The petition was fatally defective under the revised bankruptcy laws because Ms. Maxey had not obtained pre-petition credit counseling. The petition was stricken on March 27, 2006.

The seventh petition was filed by Ms. Maxey on May 12, 2006, and dismissed on June 26, 2006.

The eighth petition was filed by Mr. Maxey on July 31, 2006, and dismissed on October 12, 2006

The present case was commenced by the filing of the ninth petition on December 4, 2006, by Ms. Maxey.

Each of the petitions was filed on the eve of a foreclosure scheduled by Option One. On the morning of December 5, 2006, Ms. Maxey sent a fax to Option One's counsel notifying them of the commencement of this case. Option One nevertheless proceeded with the foreclosure.

The Maxey family earns substantial income. Based on the Maxeys' testimony, the Court concludes that the family's annual gross income is between $90,000 and $100,000. It has been at that level for approximately two years.

During that two year period, the Maxeys have made no mortgage payments. In addition, the schedules filed in the present case reflect that the Maxeys owe $66,000 in past due ad valorem taxes and homeowner association fees on their home. Although the Maxeys enjoy a high income, Ms. Maxey's schedules reflect that the total household cash and savings is only $1,400. Accordingly, the Maxeys seek bankruptcy relief from this Court when they have substantial income, have made no payments on their home mortgage for three and one-half years, have failed to pay $66,000 of assessments on their home over that period, and have saved none of the funds that they failed to pay to their creditors.

The foregoing financial facts are ameliorated by only three factors that the Court has discerned. First, the Court found the Maxeys' testimony on December 21, 2006, to be truthful. The Maxeys readily acknowledged the facts, but asked for forgiveness and another chance. The Court acknowledges their candor. Second, unlike some debtors who appear before this Court, the Maxeys are not driving luxury automobiles while their creditors are unpaid. The Maxeys own a 2000 Chevy pickup truck and a 1997 Chevy van. Third, the Maxeys are both gainfully employed and are working diligently to earn a living.

Although the Court finds the foregoing three facts to be helpful to the Maxeys, those facts are overwhelmed by the Maxeys' overall financial irresponsibility.

### Application of Law to Facts

The first issue that the Court must consider is whether this case falls within § 362(c)(3) or § 362(c)(4). Section 362(c)(3) provides that the automatic stay is in existence for 30 days if a debtor has been in a previous bankruptcy case that was dismissed within the prior one-year period. The automatic stay can be extended on motion filed and heard within the 30-day period. Section 362(c)(4) provides, among other things, that no automatic stay arises if a debtor had two or more cases dismissed within the preceding one year period.

Option One relies on *In re Kinney*, 51 B.R. 840 (Bankr. C.D. Cal. 1985) for the proposition that the Court should look at serial filings by family members as a single filing for bad faith purposes. *Kinney* pre-dates the adoption of § 362(c)(4). The language of § 362(c)(4) leaves no room for such an interpretation. Ms. Maxey's sixth petition did not result in the commencement of a case. *See In re Salazar*, 339 B.R. 622, 626 (Bankr. S.D. Tex. 2006); *In re Finlay*, 2006 WL 3240522, at *4 (S.D.N.Y. Nov. 3, 2006). Accordingly, although there were two petitions filed by Ms. Maxey within the previous year, there were not two previous dismissals. Option One did not appeal the Court's order striking Ms. Maxey's December 2005 petition rather than dismissing her case. That issue is now resolved. Mr. Maxey's filings are not counted under the plain language of § 362(c)(4). Based on the foregoing, the Court finds that § 362(c)(4) is inapplicable.

The Court will review Ms. Maxey's motion to extend the automatic stay under § 362(c)(3). The burden of proof rests on Ms. Maxey. *In re Charles*, 334 B.R. 207, 214 (Bankr. S.D. Tex. 2005). The critical issue under § 362(c)(3) is whether the new bankruptcy case was filed "in good faith as to the creditors to be stayed." 11 U.S.C. § 362(c)(3)(B). The evidence is undisputed that the Maxeys made no mortgage payments for over three years. This is their ninth bankruptcy petition. Ms. Maxey's schedules reflect that her disposable income exceeds $3,000 per month (after payment of her mortgage), but she proposed that her chapter 13 plan payments commence at only $1,000 per month. The statute requires that Ms. Maxey pay her disposable income to the trustee. 11 U.S.C. § 1325(b)(1). The plan does not propose to do so. Ms. Maxey offers no proof that this case was filed in good faith as to the creditors to be stayed, other than her apologies for her past conduct. Such apologies do not establish that this case was filed in good faith. The Court finds that this case was not filed in good faith as to the creditors to be stayed. A separate order denying Ms. Maxey's motion to extend the stay will issue.

With respect to Option One's request that the Court determine the stay inapplicable, that relief is also denied. It is premised on the theory that this case is governed by 11 U.S.C. § 362(c)(4). As set forth above, that section is inapplicable. Accordingly, the Court will examine whether Option One should be granted the alternative relief of an annulment of the automatic stay.

The automatic stay may be retroactively annulled. 11 U.S.C. § 362(d). The Fifth Circuit has repeatedly held that actions taken in violation of the automatic stay are voidable, not void. *In re Coho Resources, Inc.,* 345 F.3d 338, 344 (5th Cir. 2003). "[A]ctions taken in violation of an automatic stay are not void, but rather [] they are merely voidable, because the bankruptcy court has the power to annul the automatic stay pursuant to section 362(d)." *Picco v. Global Marine Drilling Co.,* 900 F.2d 846, 850 (5th Cir.1990). A bankruptcy court has broad discretion with respect to whether to annul the automatic stay. *In re Jones,* 63 F.3d 411, 412 n.3 (5th Cir. 1995). Although the Fifth Circuit has not explicitly articulated the factors that must be considered by a bankruptcy court with respect to an annulment of the stay, it has adopted the Eleventh Circuit's explanation of the basis of annulments under § 362 as set forth in *In re Albany Partners, Ltd.,* 749 F.2d 670 (11th Cir. 1984). *In re Pinetree,* 876 F.2d 34, 37-38 (5th Cir. 1989).

The Eleventh Circuit explained annulment as follows:

[Section] 362(d) expressly grants bankruptcy courts the option, in fashioning appropriate relief, of "annulling" the automatic stay, in addition to merely "terminating" it. The word "annulling" in this provision evidently contemplates the power of bankruptcy courts to grant relief from the stay which has retroactive effect; otherwise its inclusion, next to "terminating", would be superfluous. As is stated in 2 Collier's Bankruptcy Manual ¶ 362.06 (3d Ed.1983):

"In addition to the obvious power to 'terminate' the stay, [§ 362(d) ] also gives the bankruptcy court the power to 'annul' the stay. The difference between the two is that an order annulling the stay could operate retroactively to the date of the filing of the petition which gave rise to the stay, and thus validate actions taken by the party at a time when he may have been unaware of the existence of the stay. On the other hand, an order terminating the stay would be operative only from the date of its entry."

To similar effect is the advisory committee's note accompanying former Bankruptcy Rule 601(c), a predecessor to § 362(d), which explains the role of annulment as follows:

"This rule consists with the view that ⋯ an act or proceeding [against property in the bankruptcy court's custody taken in violation of the automatic stay] is void, but subdivision (c) recognizes that in appropriate cases the court may annul the stay so as to validate action taken during the pendency of the stay."

>Accordingly, we hold that § 362(d) permits bankruptcy courts, in appropriately limited circumstances, to grant retroactive relief from the automatic stay.
>
>In this case, unlike the example from Collier quoted above, appellees were aware of Albany Partners' bankruptcy filing when they conducted the foreclosure sale. Appellant contends that appellees thus acted at their peril, and should not have been granted retroactive relief from the stay. Appellant relies on the case of *In Re Eden Associates,* [13 B.R. 578 (Bankr. S.D.N.Y. 1981)], in which the bankruptcy court dismissed a Chapter 11 petition upon similar facts, but declined to give effect to a foreclosure sale, conducted after the filing of the bankruptcy petition, where the foreclosing party knew of the filing and of the debtor's claimed interest in the property. 13 B.R. at 585.
>
>We acknowledge that the important congressional policy behind the automatic stay demands that courts be especially hesitant to validate acts committed during the pendency of the stay. Even so, we cannot say that the bankruptcy court abused its discretion by granting such relief in this case, particularly in light of the finding that the petition was not filed in good faith. We also find it significant that Albany Partners' asserted interest in the subject property was previously litigated in appellees' possessory action against Ocean View, and was rejected by the Dougherty County Superior Court. Apparently no such prior adjudication of interests was present in the Eden case. Considering the close relationship between Ocean View and Albany Partners and the fact that Albany Partners chose not to intervene in the prior action, the bankruptcy court could reasonably hold that appellees were entitled to rely upon the previous judicial determination and to proceed with the foreclosure sale on the assumption that the Ramada Inn was not part of the bankruptcy estate. Accordingly, the bankruptcy court did not err in granting relief in the form of an annullment of the stay ab initio.

*In re Albany Partners, Ltd.,* 749 F.2d at 675-76.

This Court agrees that it should utilize its power to annul the automatic stay with hesitation. As the Court stated orally at the conclusion of the December 21, 2006 hearing, a creditor that acts with knowledge of the automatic stay acts at its peril. The Bankruptcy Code authorizes a bankruptcy court to impose severe sanctions on persons who knowingly violate the stay. 11 U.S.C. § 362(k)(1). Nevertheless, there are exceptional circumstances in this case that compel the Court to annul the stay. The facts leading up to this case are set forth above. The Court need not repeat them here. The Court does not believe that the equities of this case should give great pause. The filing of eight petitions in 38 months, with no payments to the mortgage company over that same period of time, by a family with more than $90,000 of annual income is such an egregious scenario that the Court exercises its discretionary power to annul the stay.

**Conclusion and Stay**

Separate orders will issue.

The Court recognizes that annulment of the automatic stay should be an exceptional event when the creditor proceeded with a foreclosure with full knowledge of the existence of the stay. Accordingly, the Court recognizes that Ms. Maxey may appeal this decision. The Court, *sua sponte,* and based on the evidence at the December 21, 2006 hearing, establishes a bond pending appeal. See FED. R. BANKR. P. 8005. For the reasons orally set forth on December 21, 2006, the bond is established at $3,333.00 per month, payable on or before the third day of each month beginning January 3, 2007. The debtors will not be given notice of any default nor an opportunity to cure a default in the posting of the bond. If the bond is posted in accordance with the separate order issued by the Court, then the orders issued pursuant to this memorandum opinion are stayed pending appeal. If any monthly bond deposit is not timely made, the stay pending appeal terminates without further order of the Court.

Signed at Houston, Texas on December 27, 2006.

Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE